Calwell *v.* Prindle's Adm'r *et al.*

Decided September 10, 1877.

1877.
August Term.

1. When C. made, acknowledged and delivered a deed of trust to McP. to secure a debt to P. for $777.00, and also to secure other debts in the deed of trust specified; and in said deed of trust C. expressly covenants and agrees, that he will pay each of said debts respectively, on or before the expiration of two years from the date of said deed of trust. HELD:

   That on default being made in the payment of P.'s debt, he may bring his action at law, founded on said express covenant and agreement for the recovery of his debt, and he is not bound in the first instance to resort for satisfaction to the property, conveyed in trust to secure the debts therein specified.

2. C. claims that he executed his note or bond to P., on the 10th day of February 1860, to secure the payment of which said deed of trust was executed by him, and that afterwards, in the year 1861, he paid and settled said note or bond with P., with an order he had against P., drawn by T.; and said note or bond was then and there delivered up to him by said P. that he (C) afterwards lost said note or bond, or the same was destroyed while in his possession; that he has made diligent search for the same, and has been unable to find it. P. died, and M. qualified as the administrator of P. A controversy arose in a suit between C. and the administrator of P., deceased, as to whether said debt from C. to P. had been paid. HELD:

   That under the provisions of the 23d section of chapter 130 of the Code of 1868, of this State, C. is not a competent witness to testify in his own behalf, as to the payment of said note or bond to P., or that P. on such payment, and at the time thereof delivered the said bond into his (C.'s)

# 308     SUPREME COURT OF APPEALS

possession; or that afterwards, while said bond was so in the possession of C., he (C.) lost the same, or it was destroyed.

3. Where a party to a cause, causes himself to be sworn to testify in the cause between him and the administrator of an intestate, in his own behalf, as to transactions or communications had by him personally with the decedent, and the attorney of such party for him propounds questions to him in relation to such transactions or communications, to which questions and answers thereto given by such party, the other party to said cause, to-wit: the administratar of the intestate, excepts, which exceptions are committed to writing at the time, and endorsed immediately below such questions and answers; and after the examination-in-chief the said administrator, by his counsel, cross-examines such party, strictly conforming such cross-examination to the answers of the party testifying, and the matters and things testified to in relation to such transactions or communications in his examination-in-chief, the administrator, by such cross-examination, does not waive his exceptions so made to the said testimony of the party given in chief, and does not thereby make such party his witness as to his evidence given on such cross-examination in relation to such transactions or communications; and if the exceptions to the said testimony given in chief by such party, be sustained, and the testimony excluded, because such party is not competent to testify in his own behalf as to such transactions or communications, such exclusion will extend to the evidence given by such party, on such cross-examination, as to such transactions or communications; and his answers given on such cross-examination should be considered as given in his own behalf, and should be excluded also.

4. C., being indebted to a number of persons in considerable sums of money, on the 10th day of February 1860, executed and delivered a deed, conveying real and personal property to McP., in trust to secure the payment of said debts. About fourteen years after said debts became due, according to the terms of said deed, McP., the trustee, at the request of the administrator of one of said creditors who had died, advertised the property to be sold under said deed, to satisfy the debt due the intestate, without reference in any respect to the other trust creditors. C. filed his bill of injunction restraining and inhibiting the said trustee from selling the property, conveyed by said deed of trust. In his bill C. alleges, that all the debts mentioned in said deed have been settled and paid, including the debt of said intestate; but he only makes the administrator of the intestate creditor and the trustee, parties to his bill. HELD:

That all the true creditors, or their personal representatives, should have been made parties to the bill.

A case where, after the lapse of fourteen years from the time a bond or covenant for the payment of money is due, the payment of the bond or covenant will not be presumed. (See opinion of the Court filed.)

An appeal granted upon the petition of Alex. F. Mathews, administrator of P. A. Prindle, deceased, to a decree of the circuit court of Greenbrier county, rendered on the 5th of June 1876, in a cause in chancery in said court then pending, in which E. S. Calwell was plaintiff, and said Alex. F. Mathews, administrator of P. A. Prindle, deceased, was defendant.

The case is sufficiently stated in the opinion of the Court.

Hon. Homer A. Holt, Judge of the eighth judicial circuit, rendered the decree complained of.

*Mathews & Mathews*, for appellant, referred to the following authorities:

2 Green. Ev. §528; 2 Saund. Pl. and Ev., part 1, p. 602 (margin); 10 Vt. 463; 2 Green (Iowa) 181; 9 Vt. 41; 6 B. Mon. 408; 27 Pa. St. 525; 1 Bradf. (N. Y.) 182; 2 Tuck. Com. 105 (margin); 3 Steph. Com, 566; 1 Rob. (new) Pr. 46; 16 Johns. 210; 8 Conn. 168; 1 Wash. 190; 1 Wash. 197; 1 Leigh 525; 3 Leigh 348; 4 Munf. 428; 28 Ala. 236; 17 Ala. 270; 22 Ala. 267; 2 Gray (Mass.) 279; 4 *id*. 574; 7 *id*. 418; 40 N. H. 47; 17 Gratt. 187; 1 W. Va. 109.

*Samuel Price*, for appellees, cited the following authorities:

1 Term. R. 271; 1 Phil. Ev. 676, 677; 2 Wash. C. C. R. 323; 5 W. Va. 199; 3 McCord 340, 343; 3 Stark. Ev. 1,090; 1 Starkie's Cases 374; 1 Camp. N. P. 27.

HAYMOND, JUDGE, delivered the opinion of the Court:

On the 13th day of March 1876, the plaintiff sued out of the clerk's office of the circuit court, of the

county of Greenbrier, a summons in chancery against Alexander F. Mathews administrator of P. A. Prindle deceased, *et al.*; and afterwards, on the first Monday of April 1876, the plaintiff filed his bill of injunction with the exhibits therein referred to, in the same office. The plaintiff in his bill alleges as follows to-wit : "That on the 10th day of February 1860 he executed to Joel McPherson a deed of trust upon his lands and personal estate in the county of Greenbrier to secure the payment of certain debts which he then owed, and which are set out and described in the deed of trust, a copy whereof from the records of the county court of said county is herewith filed as a part of the bill, marked No. 1. The lands and other property conveyed by the deed can also be seen by reference to said copy, which obviates the necessity of a more detailed description here. Your orator not only gave this deed of trust, but gave also to each creditor a bond or note for his debt. The object of this deed was to secure all his own individual creditors, in preference to apprehended judgments against him as one of the sureties of John E. Lewis, a defaulting sheriff of Greenbrier county, whose bond your orator never executed, but by an awkward step, which he took in giving notice for other security in a new bond, he was held estopped from denying it.

Immediately after executing the deed of trust your orator, as he had intended without the deed of trust, proceeded as rapidly as he could to pay off these debts ; and has long ago paid off every one of them.

Among the debts provided for in the deed, it will be seen, is one payable to one P. A. Prindle of $777.00 ; this debt has long ago been paid off and satisfied ; and this fact, your orator believes, is known to Joel McPherson the trustee ; he has certainly so stated, both to your orator and to others in your orator's presence ; but whether known to him or not, it is certainly known to your orator.

The debt was evidenced by bond or note, which was

1877.
August Term.

Calwell
v.
Prindle's adm'r
et al.

taken up at the time of payment; but what has become of it your orator cannot tell; he has recently searched for it but cannot find it; he supposes that it was destroyed by federal troops during the late war, who entered his house during his absence from home, opened his press, scattered and destroyed his papers, and no doubt either destroyed or carried off this bond in common with the others, as he has not seen it since; the statute of limitations, which he pleads, is a bar to this debt.

The said Prindle has departed this life, and Alexander F. Mathews has very recently qualified as his administrator, who has, as it would seem, required the trustee, Joel McPherson, to advertise the sale of the trust property for the payment of the Prindle debt—the sale to be made for cash; the advertisement has accordingly been ·inserted in the Greenbrier *Independent,* the sale to take place on the 20th day of May 1876, a copy whereof is herewith filed as part of this bill marked No. 2; and unless your honor interposes your authority, and restrains the said administrator and trustee by injunction, the sale will be made notwithstanding the payment of the debt and bar of the statute aforesaid. In tender consideration of the premises, your orator prays, that the said Alexander F. Mathews, administrator of P. A. Prindle, deceased, and Joel McPherson be made defendants to this bill and be required to answer the same fully upon oath; that the sale of the trust property aforesaid be enjoined and inhibited, and the debt aforesaid be declared satisfied and paid off; let the said administrator produce the bond or note if he can, and if he cannot, say why he cannot, and account for its absence. Your orator insists, that before any sale shall be made, the administrator and trustee or one of them, be required to file their bill, and then prove their debt as plaintiffs, making all the parties in interest defendants. Your orator prays for such other and further relief as comports with equity," &c. The bill is verified by the affidavit of the plaintiff. The injunction prayed in the bill was granted by a Judge of

the circuit court to take effect on the plaintiff, or some person for him, executing bond with security in the penalty and with the condition, prescribed in the order granting the injunction.

Exhibit No. 1, filed with the bill as an exhibit is as follows, to-wit:

Whereas, Edmund S. Calwell is justly indebted to Seldon & Miller, of the city of Richmond, in the sum of $1,607.35; Dunn & White, of the county of Greenbrier, in the sum of $824.00; P. A. Prindle, of Washington city, in the sum of $777.00; Stuart & Son, of Baltimore city, in the sum of $593.50; Wm. H. Shanklin, of Greenbriei county, in the sum of $560.00; Samuel C. Ludington, of Greenbrier county, in the sum of $405.60; Norris & Calwell, of the city of Baltimore, in the sum of $461.86; Sloane & Calwell in the sum of $129.00; John A. Nickell, of Monroe county, in the sum of $246.98; Eli Rodgers, of Greenbrier county, in the sum of $226.87; Edmund Leach, of the county of Monroe, in the sum of $163.35; Samuel Hamilton, of the county of Monroe, in the sum of $265.00; Ghael & Co., of the city of Baltimore, in the sum of $175.00; David Tuckwiller, in the sum of $222.00; W. A. Walton, in the sum of $210.00; Yates & Co., of the city of Richmond, in the sum of $160.00; Andrew Antoni, of the city of Richmond, in the sum of $79.00; David Watts, of Greenbrier county, in the sum of $65.00; Henry Miller, in the sum of $150.00; Miller & Wead, in the sum of $216.72; B. F. Wead, in the sum of $1,131.25; Kline & Carroll, in the sum of $85.00; Jacob Hayney, in the sum of $233.00; John Withrow, in the sum of $50.00; Wm. B. Calwell, in the sum of $245.00; and Estell & Eakle, in the sum of $78.00—the payment of which he is desirous and wishes to secure; that each and every of his the above named creditors, shall have full satisfaction of the amount of their debts, each respectively without preference to either over the other, and for which the said Edmund S. Calwell executes the an-

nexed conveyance as surety for the payment thereof. Therefore, this indenture, made this 10th day of February 1860, between Edmund S. Calwell, of the one part, and Joel McPherson, of the other part, witnesseth: That the said Edmund S. Calwell doth grant unto the said Joel McPherson the following property, to-wit: One tract or parcel of land known as the Dry Creek property, with the hotel and its appurtenances, containing two hundred and fifty acres more or less; one tract or parcel of land, with the appurtenances, known as the Boothe place, containing nine acres; the said Dry Creek property adjoins the land of the White Sulphur Company and the Boothe place, one mile and a half south of Dry Creek, on the road therefrom to the Sweet Springs, and situate in the county of Greenbrier; also the following personal property, to-wit: One woman slave named Sarah, seven horses and mules, three cows, and the farming utensils on and belonging to said premises; also all the furniture belonging to the hotel, and the building and appurtenances thereof, consisting of beds, bedding, chairs, tables and table furniture, and the kitchen furniture designated in a schedule annexed hereto—in trust, to secure to the above named creditors each and every of them the debts respectively above mentioned, with the accruing interest thereon, which debts each respectively the said E. S. Calwell doth hereby covenant and agree, that he will pay and fully discharge on or before the expiration of two years from the date first above named in this indenture. In the event that the debts or any part or portion thereof remain unpaid or unsatisfied at the expiration of the term above designated, then the said Joel McPherson, or his legal representative, shall proceed to expose to sale the property hereinabove named, at public auction, to the highest bidder for ready money, after having given at least ninety days' notice of the time and place of sale, by advertisement in some paper published in Lewisburg; and from the proceeds of said sale, first paying the necessary expenses

1877.
August Term.

Calwell
v.
Prindle's adm'r
et al.

of executing and recording this deed and the legal costs of sale, and then the amount of each debt above named to each of the aforesaid creditors, each respectively, together with the interest which may thereon have accrued, and the residue, if any, to the said E. S. Calwell, or to his heirs, &c. And for the purposes aforesaid, the said E. S. Calwell doth warrant generally the title to the said property to the said Joel McPherson.

Witness the following signatures and seals.

EDMUND S. CALWELL, [Seal.]<br>————————————, [Seal.]

The foregoing deed was acknowledged by plaintiff before a justice of the peace for said county of Greenbrier, on the 10th day of February 1860, and was on the same day admitted to record in the clerk's office of Greenbrier county court

Exhibit No. 2, in the bill mentioned, is in the following words, viz:

*" Trust Sale of Valuable Property.*

Pursuant to the terms of a deed of trust, executed by Edmund S. Calwell to me, as trustee, dated February 10, 1860, and recorded in deed book 23, page 134, in the office of the clerk of the county court of Greenbrier county, and being required so to do by the personal representative of P. A. Prindle, deceased, one of the beneficiaries in said deed, I will sell at public auction, to the highest bidder, in front of the hotel of W. W. Moore, in the town of Lewisburg, on Saturday, the 20th day of May 1876, such and so much of the property conveyed by said deed, as may be required to pay the costs and expenses of executing and recording said deed, the expenses of sale, and the debt secured as aforesaid to the said P. A. Prindle. The property conveyed by said deed, and which will be sold in whole or in part, consists of the 'Dry Creek' hotel, with all its appurtenances, including two hundred and fifty acres, more or less, of land; the 'Boothe place,' containing nine acres, and a

large amount of personal property, viz: furniture, horses, mules, farming utensils, &c. Terms of sale, cash."

JOEL McPHERSON, *Trustee.*"

The defendant, Alexander F. Mathews, filed his answer to the plaintiff's bill, in which he responds and alleges as follows, viz: "This respondent, saving and reserving to himself the benefit of all just exceptions and reservations to plaintiff's bill for answer thereto, or to so much thereof as he is advised it is necessary or material for him to answer, answers and says, that as to the debt of $777.00, secured to his intestate, P. A. Prindle, as of the 10th day of February 1860, he personally knows little or nothing, but is informed and alleges that the amount of said debt, viz: $777.00 was the balance found due to his said intestate upon settlement with the said plaintiff of their unsettled matters, on the 10th day of February 1860; and he is further informed and alleges, that the said plaintiff, as stated and admitted in his said bill, executed his bond to said Prindle for said debt, and that said bond was dated February 10, 1860, the date of said deed, due two years after date, with interest from date; that said bond has never come into his possession as administrator or otherwise; that he has made diligent but unsuccessful inquiry for it; that he has had diligent search made therefor among the papers and effects left by the said Prindle; that it has not been and cannot be found, and that he is informed and alleges that it has been lost or destroyed; and he here refers to the affidavit as to the existence and loss or destruction of said bond, herewith filed marked Exhibit A, and prayed to be taken and read as part of this answer. And this respondent is willing and hereby offers to indemnify the said plaintiff against any loss or damage in consequence of the destruction or loss of said bond, should it hereafter at any time be produced or found.

Further answering, this respondent says, that the said plaintiff, on the 10th day of February 1860 executed

1877.
August Term.

Calwell
v.
Prindle's adm'r
et al.

the said trust deed mentioned in and exhibited with said bill, and to which reference is here made as a part of this answer, as shown upon its face, to secure the payment of said debt along with others, and "as surety for the payment thereof," and the said plaintiff in addition to his said bond, made and executed as aforesaid, by the express terms of said deed covenanted under his hand and seal to pay the amount of said debt, with the interest accrued thereon, on or before the expiration of two years from the date of said indenture. And this respondent denies expressly and most positively, that the said debt, or any part thereof, has been paid, or that the said bond has been lifted or taken up by the said plaintiff, as in his bill alleged. And this respondent avers that the whole of said debt, with the interest accrued thereon since the 10th day of February 1860, although long since due by the terms of said bond and deed, still remains wholly unsatisfied. And in like manner this respondent denies that the statute of limitations is a bar to the said debt, as the plaintiff alleges, and he denies that it is known to his co-defendant, Joel McPherson, that said debt is paid, or that he has ever so stated to the plaintiff or to any one else.

This respondent for proof of said debt, relies upon the said bond, lost or destroyed as aforesaid, upon the said deed of trust, and the statements and admissions therein contained; and the said plaintiff in his bill, while seeking to obstruct and enjoin the collection of the said debt, admits that it had an existence and was valid, but alleges, and it is for him now to prove this if it be true, that it has been paid. And this respondent, the said debt being admitted fully both in the said deed and bill, protests against being required, as the plaintiff is seeking to shift the burden of proof from his own shoulders where it properly belongs—insists that he shall not be required to file his bill in this honorable court, and prove his said debt, which under the circumstances would be to require him to prove negatively that it has not

been paid. Further answering, this respondent denies each and every allegation in the said bill contained, not herein expressly admitted. And the said debt having been allowed patiently to stand for fourteen years since it was due, this respondent protests against being now delayed in its collection, or hindered in the enforcement of the security voluntarily provided by the debtor himself. And he asks that the injunction awarded the plaintiff may be dissolved, and his bill dismissed," &c. This answer is verrified by the affidavit of the defendant Mathews.

Exhibit A. filed with the answer of Mathews is in these words, viz :

STATE OF WEST VIRGINIA :

*Greenbrier County, to-wit :*

Alex. F. Mathews, being duly sworn, says that he is the administrator of P. A. Prindle, deceased; that he is informed and believes that the said P. A. Prindle, at the time of his death, held a bond executed to him by E. S. Calwell for $777.00, dated February 10, 1860, due two years after date, with interest from date, which is the same debt secured to said P. A. Prindle by the said E. S. Calwell by a deed of trust to Joel McPherson, trustee, dated February 10, 1860; that as such administrator said bond has never come to his hands; that he has made diligent inquiry, and has had diligent search made among the papers and effects of the said Prindle for said bond ; that it cannot be found ; and that he is informed and believes that it has been lost or destroyed.

ALEX. F. MATHEWS.

Taken, subscribed and sworn to, before me, this the 30th day of March 1876.

J. ALEX. MONTGOMERY,
*Notary Public.*

The deposition of David Watts was taken and filed by the plaintiff; but it was excepted to by the defendant Mathews, as being incompetent and irrelevant ; and the court sustained the exception, I think properly. As

1877.
August Term.

Calwell
v.
Prindle's adm'r
et al.

there is nothing in the deposition of Davis, that is relevant to the matters in issue or that amounts to evidence, I pass it by without further notice. But the plaintiff took his own deposition, to which the defendant Mathews filed exceptions. The deposition was taken on the 24th day of March 1876, and the deposition, exceptions thereto and cross-examination are as follows, viz: .

1st Question by plaintiff's attorney—State what connection you have with this case? Answer—I am the plaintiff.

2d Question by same—State whether or not you ever paid the debt of $777.00, due to P. A. Prindle, provided for among others in the deed executed by you to Joel McPherson as trustee, on the 10th day of February 1860? If you ever paid said debt, or any part thereof, state when and how and to whom you paid it?

(N. B.—The defendant, P. A. Prindle's administrator, excepts to the foregoing question, because the witness, a party to the suit and the party in interest, is not competent to testify as to any transaction with the said P. A. Prindle, he being now deceased.—M. & M., *Att'ys*.)

————I paid the debt in 1861, in Washington city, D. C., to P. A. Prindle; I paid it with an order drawn on him by his partner, which I have and herewith file with this deposition, marked A.

(N. B.—The defendant, P. A. Prindle's administrator, excepts to the above answer, upon the ground that it is not competent testimony, because it details a transaction had with said Prindle, who is dead, *by the plaintiff.*— M. & M., *Att'ys*.)

3d Question by same.—State as near as you can the month that you paid Prindle, and all that occured between you and Prindle on that occasion; state fully? Answer—I paid Prindle in the month of March 1861. I was in Richmond, Va.; my brother, Wm. B. Calwell, said that he owed Prindle, and was going over to Washington to pay him; I said that I owed him and would go along with him. We went to Washington; I stayed

there about one month with Prindle, and during that time had a settlement with him, and took up the note with this order. During the war, my papers were rifled by the Yankees, and I suppose said note was destroyed at that time, as I have not been able to find it since. This order I found among some scattered papers.

1877.
August Term.

Calwell
v.
Prindle's adm'r
*et al.*

(N. B.—The defendant, P. A. Prindle's administrator, excepts to the foregoing question and answer. So far as it states a conversation between the witness and Wm. B. Calwell, it is irrelevant and incompetent, and so far as it states a transaction between the witness and Prindle, it is incompetent for the same reason that the former answers and questions are excepted to.—M. & M. *Att'ys*.)

4th Question by same—The order you filed, and which you say you paid the note to Prindle with, is drawn on Prindle by Jno. F. Thomas. Please state how Thomas happened to draw said order on P. A. Prindle? Answer—Prindle had been renting a room and boarding two men with me for several years, for which he paid me five hundred dollars a year for rents, and paid me for board in addition. The last year Taliaferro and Thomas were the men that occupied the room, and when they came to settle up Prindle was absent, and they gave me this order on Prindle for what was due me by Prindle at the time of the settlement. This order, though given in 1859, was not paid until 1861, as I did not have a settlement with Prindle, after I got the order, until the spring of 1861, in Washington.

(N. B.—The defendant, P. A. Prindle's administrator, excepts to the foregoing answer as irrelevant and incompetent.)

*Cross-Examination.*

1st Question by defendant—At the time spoken of, when you paid Prindle, and took up the note with said order in March 1861, did you have said order with you at the settlement? Answer—I did not have it with me; but Prindle knew all about the order.

Question 2—Did you have no memorandum of the

date and amount of said order?    Answer—I had no such memorandum; Prindle just remarked, that I had an order upon him for near the amount of the debt.

Question 3—If Prindle paid the order by giving up the note, why did you not send and return the order to him?    Answer—Because I was expecting him to come up to visit me every day, until I heard of his death; in fact he was on his way to my house when he died.

The following is Exhibit A., referred to in the foregoing deposition, viz:

DRY CREEK, August 30, 1857.

"$757.35.    Mr. P. A. Prindle will please pay E. S. Calwell seven hundred and fifty-seven dollars and thirty-five cents ($757.35), being balance due on bill of Taliaferro and Thomas.

JOHN F. THOMAS."

The deposition of James Cox was also taken and filed by the plaintiff; and the defendant, Mathews, filed exceptions to it, as being hearsay, incompetent and irrelevant testimony.    The court sustained the exception rightly, I think, as the witness only deposed to what other persons had told him; his evidence is simply hearsay, and inadmissible.    The plaintiff also took and filed the deposition of Joel McPherson, the trustee, in which he testified that he is fully persuaded that the debt referred to was adjusted by E. S. Calwell with P. A. Prindle; but that he has no personal knowledge of said adjustment.    He also says that his impression was derived from hearsay, but that Prindle never admitted to him that said debt was paid, and he never saw Prindle after 1861.    No exceptions were filed to the deposition of said McPherson.    This is all the evidence filed in the cause by the plaintiff.    The defendant, Mathews, filed no depositions.    The trustee, McPherson, failed to answer the bill.    On the 25th day of May 1876, the defendant, Mathews, administrator, &c., filed his answer by leave of the court, to which the plaintiff replied generally; and the said Mathews then moved the court to

dissolve the injunction awarded in the cause, and dismiss the bill. Afterwards, on the 5th day of June 1876, the court made and entered a decree in the cause as follows, viz:

"This cause having been regularly set down for hearing, came on this — day of June 1876, to be heard upon the subpœna returned executed, the bill taken for confessed as to the defendant, Joel McPherson, answer of the defendant, the administrator of P. A. Prindle, replication thereto, exhibits, depositions taken and offered by the plaintiff, exceptions thereto, and exceptions to particular questions and answers propounded to and given by the witnesses, upon the motion of the defendant made on a previous day of the term to dissolve the injunction heretofore awarded the plaintiff, which was set down to be argued and heard, and upon the arguments of counsel. Upon consideration whereof, the court being of opinion that said exceptions to said depositions endorsed thereon are well taken, the said exceptions are sustained, and the said depositions so far as excepted to are suppressed. And the court is further of opinion, that in connection with the time elapsed there is enough in the record—in the absence of the bond or note given for the debt in the deed of trust mentioned, both parties admitting that there was such bond or note, and the absence thereof, in the opinion of the court not being satisfactorily accounted for, unless it be as a paper lost out of the possession of plaintiff Calwell—to show that the debt now claimed by the defendant Mathews, as administrator of P. A. Prindle deceased, is not a subsisting debt. And the court being further of the opinion, that all the creditors mentioned in the said deed of trust ought to be parties to this cause, but the parties now before the court desiring the court to pronounce a decree upon the merits of the case, as they now appear between the said parties, it is therefore adjudged, ordered and decreed, that the aforesaid motion to dissolve the injunction be and the same is hereby overruled, and instead thereof that the

same be made perpetual as to payment of said Prindle debt, and that the plaintiff recover of the defendant, A. F. Mathews, administrator of P. A. Prindle, deceased, his costs about his suit in this behalf expended, to be levied of the goods and chattels of his intestate in his hands to be administered; but this decree to be without prejudice to the other creditors, secured by said deed of trust."

It must be observed, that none of the creditors mentioned in said deed of trust were parties to the suit except plaintiff. It does not appear when Prindle died, or when the defendant Mathews qualified as his administrator; but the plaintiff alleges in his bill that defendant Mathews recently qualified as administrator, &c.

The deed of trust in the bill mentioned states substantially, that Prindle resided in Washington city at the date of said deed. McPherson states in his deposition, that he never saw Prindle after 1861. McPherson resided, it seems, in Greenbrier county, and so did the plaintiff at the date of said deed; and I infer from the evidence and papers in the cause, that they not only resided in said county at the date of the deed, but that they still continue to reside in said county. The plaintiff in and by the said deed of trust not only acknowledges, that he was justly indebted to said Prindle in the sum of $777.00 at the date of the deed of trust, but he expressly covenants in said deed of trust, that he will pay and fully discharge said debt on or before the expiration of two years from the date of said trust deed. The language of said deed of trust (which is the plaintiff's language) is (after reciting the several debts, and persons to whom each debt is due, and the amount due to each creditor, &c.): " which debts each respectively, the said E. S. Calwell doth hereby covenant and agree, that he will pay and fully discharge on or before the expiration of two years from the date first above named in this indenture." No reference whatever is made in the deed of trust to any note or bond of plaintiff being given to

Prindle, or any of the other numerous creditors mentioned in the deed of trust. I think it is apparent from the face of the deed of trust, that it was not the intent of the parties, that the creditors should be required in the first instance to seek a remedy against the property conveyed in trust. There is nothing in the deed indicating the necessity of such a step before a resort to the person. The deed on its face shows, the object of it was to secure the payment of the debt therein acknowledged, and payment of which is therein *expressly* promised as aforesaid. The remedy to recover the debt by action after default of payment exists in full force; and the covenant and agreement contained in said deed is sufficient to found an action at law upon, after default in the payment of the debt, for the recovery thereof, without first resorting to the property conveyed in trust: *Elder* v. *Rouse,* 15 Wend. (N. Y.) 219. As we have seen, the plaintiff in his bill claims, that he not only gave the deed of trust, but gave also to each creditor a bond or note for his debt. He also alleges in his bill that he has paid the debt, and also says: " the statute of limitations, which he pleads, is a bar to this debt." It is manifest that the recovery of the debt is not barred by the statute of limitations, because twenty years had not elapsed since the debt, in the deed of trust mentioned, became due and payable according to the terms of the plaintiff's express convenant to pay, contained in the deed of trust: twenty years being the limitation for a recovery on a covenant or bond for the payment of money; the said deed of trust having been executed before the Code of this State of 1868 took effect. At the time the property conveyed by said deed of trust was advertised for sale by the trustee, only about fourteen years had elapsed since the debt became due and payable. The plaintiff, in order to prove payment of the debt, caused himself to be examined in his own behalf, and as we have seen, he states in his deposition that he paid the debt before the expiration of the two years from the date of the trust, and that he paid

it with the Thomas order to Prindle, and took up the bond or note which he had given for the debt, and that during the war the said bond or note was lost or destroyed, as he believes, in the manner stated in his evidence. He further states he has made diligent search for the bond or note, and has not been able to find it, but that he found said order, which he exhibits with his deposition. The questions and answers of plaintiff in his deposition were each excepted to by the counsel of defendant, Mathews, as they were propounded and given.

The circuit court seems by its decree to have sustained the exceptions of defendant Mathews to said questions and answers. The first question to be considered is, whether any part of said answers of plaintiff can legally be read as evidence in his behalf. The 23d section ot chapter 130 of the Code of this State, declares, that "a party to a civil action, suit or proceeding may be examined as a witness in his own behalf, or in behalf of any other party, in the manner and subject to the same rules of examination as any other witness, except as follows:

1st. An assignor of a chose in action shall not be examined in favor of his assignee, unless the opposite party be living.

2d. A party shall not be examined in his own behalf in respect to any transaction or communication, had personally with a deceased person, against parties who are the executors, administrators, heirs-at-law, next of kin, or assignees of such deceased person, where they have acquired title to the cause of action from or through such deceased person or have been sued as such executors, administrators, heirs-at-law, next of kin, or assignees," &c.

That the payment of the note or bond by the plaintiff to Prindle with the Thomas order, was a transaction had personally with Prindle is manifest and that the conversation between plaintiff and Prindle then, or before or after, was a communication had personally with Prindle is equally clear. The execution and delivery by plaintiff of a note or bond to Prindle, (if any was ever executed

other than the express covenant or promise to pay con- <span style="margin-left:1em">1877.<br>August Term.</span>
tained in the deed of trust) was also a transaction had <span style="margin-left:1em">Calwell<br>v.<br>Prindle's adm'r<br>et al.</span>
personally by plaintiff with Prindle and the note or
bond itself is and must necessarily constitute a part of
that transaction, whether in the hands of Prindle or
plaintiff. The obtaining of the note or bond by plaintiff
from Prindle is also a transaction, had personally by
plaintiff with Prindle, and the possession of the bond or
note by plaintiff, after he had obtained it from Prin-
dle, is necessarily a part of the transaction, by which
it was so obtained by plaintiff from Prindle—the
one cannot be separated from the other, so as to
render the plaintiff incompetent under the statute to
testify as to the one fact, and competent to testify
as to the other. And so, the note or bond being
in fact a transaction had personally with Prindle
by the plaintiff, it must follow that the plaintiff is not
competent to testify as a witness on his own behalf as to
any matter or thing in relation to his possession or loss
of said note or bond. As before stated, it must be mani-
fest, that plaintiff is not competent to testify in his own
behalf as to the payment of the note or bond by him
personally to Prindle; but his counsel by his argument
seeks to divide the transaction and satisfy us, that although
it may not be competent for plaintiff on his own behalf
to prove the payment of the debt by plaintiff to Prindle,
or the delivery of the note or bond by Prindle to
plaintiff, yet that it is competent for the plaintiff to
prove as a witness in his own behalf, that he had posses-
sion of the bond or note after the date of the deed of
trust, and in the year 1861, and that it was lost or de-
stroyed while in his possession during the late war. It
is quite evident, that to sustain the position of plaintiff's
counsel in this respect would be to permit the defendant
to accomplish just what the statute prohibits, viz: To
prove in his own behalf the payment of the note or
bond by plaintiff to Prindle, the intestate. Suppose the
plaintiff had filed with his bill what he alleged therein,

to be the note or bond given by him to Prindle for said debt, could it be maintained that he would be a competent witness in his own behalf under the statute to prove the truth of the allegation. Manifestly to permit him to do so would be to permit him to testify in his own behalf to a transaction, had personally by him with Prindle, the intestate. How could he as a witness identify a note or bond in his possession, as being the note or bond given by him to Prindle for the debt in question without testifying, that he executed the same note or bond to Prindle for the debt. If he produced a note or bond, it would be competent for him to identify it by evidence other than his own, as being the note or bond executed by him to Prindle for the said debt. But plaintiff would clearly be incompetent to do so by his testimony given in his own behalf. How then, the note or bond not being produced, can he be permitted to testify in his own behalf, that he had the note or bond given by him to Prindle in his possession after its delivery to Prindle, and that it was lost or destroyed while in his possession. Certainly he could not be permitted to do so without violating both the letter and spirit of the act. For the foregoing reasons it seems to me, that no part of plaintiff's depositions given in his own behalf, or to be more explicit, in chief, is admissible under the statute, except so much as proves the making and delivery of the Thomas order; and it cannot therefore be read, except as aforesaid, in his behalf for any purpose. But it is argued by plaintiff's counsel, that if my conclusion in this respect be true, still the deposition of plaintiff, given on cross-examination by defendant Mathews, should be read as evidence, and that plaintiff's evidence, given on cross-examination by defendant Mathews, should be read as evidence in the cause. It will be seen by referring to the cross-examination of plaintiff, that it is strictly confined to the matters to which plaintiff testified on his examination in chief, and does not relate to any new matter or fact. It does not appear that defendant, Mathews, withdrew his

exceptions to plaintiff's testimony given in chief, in his own behalf, unless the cross-examination of the witness strictly as to matters and facts deposed to by plaintiff, in his examination in chief, was a waiver of the exceptions taken and filed to the testimony in chief given by plaintiff. The cross-examination being strictly confined to the matters and facts, testified to by plaintiff in his testimony in chief, should not be construed as a waiver of the exceptions, filed to the testimony given in chief; but the exceptions apply to the whole deposition in such case. The defendant, by such cross-examination, does not make the plaintiff his witness; but while the cross-examination is strictly confined to the matters and facts, testified to by the plaintiff in his own behalf on his examination in chief, the plaintiff's answers made to the defendant's questions on such cross-examination should and must be held as testimony given in his own behalf, and excepted to by the defendant. A reverse ruling would be harsh, and would operate great injustice not unfrequently. I do not understand it has ever been held, that a party makes a witness, produced and examined by his adversary, his witness simply by cross-examining the witness as to matters and facts, to which he has testified in his testimony given in chief. He does not, by such cross-examination, admit the competency of the witness to testify as to those matters, any more than he does the truth of his evidence, or his integrity of character.

The plaintiff does prove the Thomas order on Prindle for $757.35; that is he proves by his evidence, that Thomas gave him the order. This much, I think, it was competent for him to testify to. But it was not competent or proper for him to testify, that the amount of the order was due to him from Prindle under a contract made by him and Prindle, as stated in his testimony. Excluding the whole of plaintiff's deposition given by himself from the case, except his testimony that Thomas gave him the order, which I think must be

done under the law, we have nothing left except the naked order from Thomas to plaintiff upon Prindle for the amount thereof, and no legal evidence in the cause, which we can consider, that the order was even in any way accepted by Prindle, or that the amount thereof was due from Prindle to plaintiff. This order is dated the 30th of August 1857, being over two years before plaintiff executed the said deed of trust, in which he not only acknowledges that he owes Prindle the debt of $777.00, but in express language covenants and agrees to pay Prindle's said debt in two years after the date of said deed of trust. On the 10th of February 1860, when plaintiff executed said deed of trust and, as he claims his note or bond to Prindle for $777.00, if interest be calculated upon the amount of the said Thomas order to the date of the deed of trust, and the order was a proper charge against Prindle on that day, Prindle was indebted to plaintiff, instead of plaintiff being indebted to Prindle, as may be easily ascertained by making the calculation. But this order, as the case now stands before us, is not evidence against Prindle, or his personal representative for any purpose. Perhaps it might be made so by proper legal evidence, of this however I do not now express an opinion. The deposition of McPherson simply states an impression derived from hearsay. This deposition neither proves, nor tends to prove anything—it is too uncertain and inconclusive in its very nature to be of any efficacy or force as evidence. Under the view I have presented there is no proof of payment of the said debt of $777.00 to Prindle. The only question left for consideration is, whether the lapse of time, between the time the said debt became due, and the time the property was advertised for sale, which was about fourteen years, in connection with other circumstances appearing in the cause, are sufficient to authorize us to infer, or presume that said debt was paid or satisfied. There is in fact but one circumstance in the cause entitled to any consideration, after excluding the evidence of plaintiff, and that

is, the failure and inability of the defendant, Mathews, the administrator, to produce the bond or note, which plaintiff alleges he made to Prindle for said debt. I have shown that the said note or bond, if ever made, was not material or necessary to prove or establish the plaintiff's debt in this cause. The copy of the deed of trust, filed by plaintiff with his bill, as evidence in the cause, establishes the debt. The plaintiff seems to have forgotten or overlooked the fact, that said deed of trust contains an express covenant on his part, to pay said debt in two years. Under the circumstances of this case, as it now stands, I do not understand that the mere circumstance of the inability of the defendant, Mathews, the administrator, to produce the said bond or note, is sufficient, in connection with the lapse of time, to authorize or justify the inference or presumption, that said debt has been paid. Indeed in this case, as it is now presented, I do not consider the failure or inability to produce said note or bond being a circumstance unconnected, as it is, with other circumstances or facts proven or properly appearing, bearing upon the question of payment, as being entitled to any efficacy, or as authorizing any reasonable inference, or presumption of payment of the debt in question, connected with the lapse of time in this case. The mere lapse of fourteen years since the debt became due in this case, unconnected with pertinent circumstances proved, from which an inference of payment of the debt may be reasonably drawn, does not authorize a presumption of payment by a court or jury. Circumstances which can not generate in the mind more than a mere suspicion that the debt has been paid, and which are so remote from the question in issue, as probably will confuse and mislead the mind instead of furnishing data, from which correct inferences may be drawn as to the truth, are not even admissible as evidence in connection with the lapse of time, when less than twenty years have elapsed since the bond or covenant became due, unless aided and strengthened by other circumstances pertinent

*1877.*
*August Term.*

Calwell
v.
Prindle's adm'r
*et al.*

and relevant, which together with them and the lapse of time, where considerable, may reasonably authorize the inference of payment. See, on this subject, the opinion of this Court in the case of *Sadler's adm'r* v. *Kennedy's adm'x*, decided during the present term of this Court. That circumstances may be proven in this case, from which, together with the lapse of fourteen years, if they exist, the inference that the debt had been paid might be authorized, I think is not improbable from the authorities. But this mode of defeating the recovery of debts due the estate of the dead, is not very satisfactory, unless the circumstances relied on are pertinent, efficacious and convincing in their nature. The living may explain circumstances, and by such explanation repel and destroy their effect; but the dead are silent, while circumstances deceptive and capable of misleading may rob their estates, and impoverish their children as well as their honest creditors.

Upon the whole it seems to me, that the circuit court erred in its decree of June 1876 in ascertaining and determining, that the claim of defendant, Mathews, administrator of P. A. Prindle, deceased, from what appears in the cause, is not a subsisting debt, and in perpetuating the injunction theretofore awarded in the cause. The creditors named in said trust deed, their assigns or personal representatives, as the case may be, should have been made parties to the bill. They, as well as the plaintiff, if their debts secured by said trust deed have not been paid, have the right to contest the debt claimed by Prindle's administrator in this cause, and to have their debts, if existing, paid. The trustee, McPherson, should not have advertised the property in the said deed of trust mentioned, to be sold to pay the Prindle debt, to the exclusion of the other creditors named in said deed, from anything that now appears in this case. If the trustee entertained any reasonable doubt, as to whether the Prindle debt was paid or not, and did not know certainly that the other debts in said deed of trust

mentioned were satisfied, or did not exist, he should not have proceeded to advertise the property, or any part of it, for sale, until the existence or non-existence of the said trust debts, or any part of them, had been first judicially ascertained; and for that purpose he should have filed his bill in equity.

The decree rendered in the cause must be reversed, with costs to the appellant, and against the appellee, Edmund S. Calwell, and the cause remanded to the circuit court of the county of Greenbrier, with instructions to said court to permit the plaintiff to file an amended bill, making new and additional parties to the cause, in accordance with the opinion of this Court, if he shall ask permission to do so in such time, as said court shall deem reasonable; and if the plaintiff shall fail to file such amended bill in such time, as said circuit court may deem reasonable, then the said circuit court to dissolve the injunction awarded in the cause, and dismiss the plaintiff's bill at his costs. And if the plaintiff shall file such amended bill, leave is given him to take and file further depositions of witnesses upon the subject of the payment, and the existence or non-existence of said Prindle debt, that question being reserved and left open for further inquiry and consideration; and for such other and further proceedings to be had in said cause in said circuit court, as may be in accordance with the rules and principles governing courts of equity.

DECREE REVERSED and cause remanded.