# CHARLESTON.

POTEET v. IMBODEN *et al.*

Submitted February 1, 1916.    Decided February 8, 1916.

1. CONTRACTS—*Discharge by New Contract—Novation.*
   When the parties to a contract enter into an entirely new one with reference to the same subject matter, and the terms of which are co-extensive with but repugnant to those of the original contract, the old will be regarded as having been discharged by the new contract.  (p. 577).

2. APPEAL AND ERROR—*Presentation Below—Admission of Evidence.*
   Evidence which is wholly incompetent may be taken advantage of in an appellate court, whether objected to in the lower court or not.  (p. 579).

3. WITNESSES—*Waiver of Objection- · ross Examination—Depositions.*
   When timely objection has been interposed to the deposition of an incompetent witness, the objecting party does not waive such objection by a cross-examination, limited to the subject matter of the evidence given in chief.  (p. 580).

Appeal from Circuit Court, Fayette County.

Suit by L. E. Poteet against G. W. Imboden and others, executors, etc.  From decree for defendants, plaintiff appeals.

*Affirmed.*

*Maynard F. Stiles,* for appellant.

*Dillon & Nuckolls,* for appellees.

MILLER, JUDGE:

A former decree in this case, in favor of plaintiff, was reversed upon appeal, upon demurrer, for want of parties, and the cause remanded for amendment of the bill and for further proceedings.  73 W. Va. 567, 80 S. E. 958.

The present appeal is by plaintiff from the final decree of January 25, 1915, on his original and amended bills, with answers of defendants thereto, report of the master commissioners, etc., dissolving the preliminary injunction, dismissing both bills, and adjudging plaintiff to pay defendants their costs.

The purposes of the suit were, first, to obtain a settlement

by the defendants, G. W. Imboden and Rosa M. Harvey, executors of the last will and testament of Morris Harvey, deceased, for one fourth of certain royalties collected or that should have been collected, on coal mined or that should have been mined from a tract of two hundred acres of land in Fayette County, under two several leases by Harvey and another, the first of the Sewell seam, to the Harvey Coal and Coke Company, of May 25, 1893; the second, of the Fire Creek seam, to J. A. McGuffin, of October 17, 1901; also to enjoin said executors, defendants, from instituting a threatened suit at law against plaintiff to collect from him five several notes, dated October 1, 1908, for two thousand dollars each, at one, two, three, four, and five years, respectively, alleged to have been executed by him to the executors of said Harvey in settlement of transactions with Harvey in the latter's life time, and also to enjoin the sale and disposal of said notes, and of certain stock of the Horse Creek Land and Mining Company, pledged as collateral thereto, and also to enjoin said executors from disposing of certain other assets of said estate, liable to the payment of any balance that might be found due plaintiff in the settlement of said royalty accounts prayed for.

As the basis for the relief prayed for plaintiff alleged in his original and amended bills that he is owner in his own right, as legatee under the will of his father, the late John Poteet, deceased, and by assignment, first from his mother, Frances J. Pegram, formerly Poteet, now also deceased, and second, from his brother George A. Poteet, also legatees under said will, of the contract for said royalties and of the balance or balances which may be found due from said executors on such settlement.

The assignment of Frances J. Pegram, plaintiff's mother, is dated October 15, 1910; this suit was begun a few days later, on November 17, 1910; while the assignment of George A. Poteet purports to have been made on July 20, 1914, after the death of Mrs. Pegram, the mother, pending this suit, and after the decision of this court on the former appeal, and is one of the subjects of the amended bill.

By a provision in his will the said John Poteet, among other things, bequeathed to his wife, Frances J. Poteet, during her

natural life, all his personal property, consisting of all stock, household and kitchen furniture, bonds, notes, money and all other personal property of whatever description of which he might die seized, after payment of his debts, to be held and enjoyed by her during her life, and at her death the remainder to go to and be divided between his two sons, the said George A. and Lucien E. Poteet. And said testator also named said George A. and Lucien E. Poteet executors and empowered them to sell his lands and to manage and control his personal estate so given to his wife.

It is alleged also that in 1880, plaintiff's father, the said John Poteet, and George Poteet, being the owners of a tract of two hundred acres of land, containing two valuable seams of coal, the Sewell seam and the Fire Creek seam, sold and conveyed the said coal in the Sewell seam to said Morris Harvey, granting also certain mining rights, but reserving coal for domestic purposes for three families; and that afterwards by deed of August 25, 1893, said John Poteet, having in the meantime acquired the interest of said George Poteet, granted to said Harvey enlarged mining privileges, and in addition conveyed to him all such coal as had been reserved in the former deed; and that a part of the consideration for said grants was the agreement made between Harvey and Poteet, subsequently evidenced by a writing under seal, that Harvey should lease said coal upon royalty and cause the same to be mined, and should pay to Poteet, or to his successors in interest, one fourth of the royalty to be derived from the coal, and that Poteet should have a one fourth interest in such royalty.

The alleged writing, witnessing the alleged royalty agreement was cotemporaneous with the deed of August 25, 1893, and a part of the same transaction. At that time, as the bill shows, Harvey had already leased the Sewell seam of coal to the Harvey Coal and Coke Company, on May 29, 1893, at ten cents per ton royalty, and a minimum royalty of five thousand dollars per year, with certain mining rights also granted, and without reservation of coal for domestic purposes reserved in the deed of May 27, 1880. The lease to McGuffin of the alleged Fire Creek seam was not made until October 17, 1901, at five cents per ton, minimum royalty two

thousand dollars for 1903, three thousand dollars for 1904, and four thousand dollars per annum thereafter, but subsequently by deed the payment of royalties was made to begin in 1905. The deed of August 25, 1893, and royalty agreement of the same date, are not very well pleaded, either in the original or in the amended bill; but they appear in the evidence, and no exception or objection was made to their introduction in evidence because of insufficient pleading or other ground.

It is conceded that the primary rights of the parties in respect to the royalty on the coal from the Sewell seam and from the Fire Creek seam, depend upon the proper construction of these instruments. What the original agreement of 1880, between Poteet and Harvey, as to royalty, may have been, is in no other way evidenced, except by the contract between them in 1893, and the deed of the same date, which must be read and construed together. It is recited in the deed: "That whereas the said parties of the first part are now the owners of the surface of the hereinafter described two tracts of land and the said Morris Harvey is the owner of the minerals and coal in and upon all of the said two tracts of land as will fully appear from certain deeds of record in said Fayette County executed by the said parties of the first part and others to him, and in order and for the purpose of more clearly defining and setting forth the rights and interests and to hereafter prevent any complications between them this deed is executed." And this deed then witnesseth: "That for and in consideration of Five Dollars cash in hand paid the receipt of which is hereby acknowledged, and other valuable considerations, The said parties of the first part do grant bargain and sell assign release and confirm unto the said Morris Harvey his heirs and assigns, or those claiming under by or from him either by deed or lease, heretofore or hereafter made, all of their interest in the minerals including the coal in and upon the hereinafter described two tracts of land known as the Poteet tract of land of two hundred acres and the Hill tract of land of one hundred and forty eight acres, including in this grant all privileges necessary and convenient for the successful mining and raising and shipping of the coal on and from the said two tracts of land as well as also the

right and privilege of constructing all necessary tramways for the hauling of the said coal over and under said land, as also the use and privileges of hauling the coal over said roads from all the contiguous lands of the said Harvey or those claiming under him, the said two tracts of land are described as follows.''

The said royalty agreement provides: ''That Whereas, in the Original contract of purchase by the said Harvey of the said John Poteet's half interest in the minerals and coal of the two hundred acres tract purchased by the said Harvey from John and George Poteet, it was understood and agreed that the said John Poteet was to have a one-fourth interest in the coal royalty received by said Harvey when the coal was mined, and whereas the said Harvey has executed a deed of lease to the Harvey Coal and Coke Company, of the said land, Now, Therefore, this Contract further Witnesseth: That for and in consideration of Five Dollars, cash in hand paid, the receipt of which is hereby acknowledged by the said Harvey, the said Morris Harvey hereby agrees and binds himself to pay to the said John Poteet, the one-fourth of all royalty received by him from the said 'Harvey Coal and Coke Company', for coal mined and paid for by said company for coal mined from the said Two Hundred acres of land as aforesaid.''

In giving construction to these instruments we are required to give heed to the relationship of the parties and to the facts and circumstances surrounding them, as well as to the manifest purposes of the instruments. The deed of 1880 was absolute, and, so far as the record shows, there was no agreement prior to August 25, 1893, evidencing any rights of John Poteet to any part of the royalty in the coal. Though the deed of 1880, was made by both John and George Poteet, the latter was in no way provided for in the royalty agreement; thirteen years had elapsed from the date of that deed to the date of the deed for the Sewell seam to the Harvey Coal and Coke Company. That deed for some reason took no account of the coal reserved for domestic purposes in the deed of 1880, and purported to grant more extensive mining rights than were conveyed by the previous deed, which was limited to the Sewell seam.

So on the face of the records the situation of the parties was: Poteet apparently had no enforceable contract with Harvey for royalty, and Harvey but a few months before had granted the coal without the reservation for domestic uses, and also greater mining rights than he had to convey under the deed of 1880. Moreover, the deed amounts to a concessum that the rights and interests of the parties had not been previously clearly defined, and its expressed object was to more clearly define those rights and interests and to thereafter prevent any complication between them. To accomplish this what was done? Why, the parties of the first part did thereby *"grant, bargain and sell, assign, release and confirm* unto the said Morris Harvey, his heirs and assigns, or those claiming under by or from him, either by deed or lease, heretofore or hereafter made, all of their interest in the minerals including the coal in and upon the hereinafter described two tracts of land."

What then was in the minds of the parties at this time, and what was covered by the plain terms of this grant? It is conceded that the coal for domestic purposes, previously reserved, was granted. The lease to the Harvey Coal and Coke Company of the Sewell seam, made in May preceding, and the only lease or grant of the coal by Harvey up to that time, was evidently in the minds of the parties, for the deed was a grant, etc., not only to Harvey, but to his heirs, etc., and to "those claiming under by or from him, either by deed or lease". It clearly contemplated that Harvey would subsequently convey or lease the land or coal to others, for the deed in specific terms extends the .grant, etc., to deeds or leases that might thereafter be made; and as completely in the last instance as in the first, the grantor thereby discharged the same of "all of their interest in the minerals including the coal in and upon" said land. By the very terms of the grant everything past and prospective was granted; nothing was left in the grantors.

What then was reserved to Poteet or the grantors in this deed? Nothing in the deed taken by itself. We must turn to the cotemporaneous contract. This contract recites in general terms that "in the Original contract of purchase by the said Harvey of the said John Poteet's half interest in the

minerals and coal  *  *  *  it was understood and agreed that said John Poteet was to have a one-fourth interest in the coal royalty received by said Harvey when the coal was mined.'' But what was the agreement made respecting that coal royalty? Was Poteet to continue thereafter entitled to a one-fourth interest in all the royalty on the coal mined? No, the contract does not say so. After referring to the recent deed to the Harvey Coal and Coke Company, the contract provides: ''That for and in consideration of Five Dollars, cash in hand paid, the receipt of which is hereby acknowledged by the said Harvey, the said Morris Harvey hereby agrees and binds himself to pay to the said John Poteet, the one-fourth of all royalty received by him from the said 'Harvey Coal and Coke Company', for coal mined and paid for by said company for coal mined from the said Two Hundred acres of land as aforesaid.''

But in the face of these instruments, the deed granting away all rights, and the contract limiting the rights of Poteet to the royalty on the coal mined under the Harvey Coal and Coke Company lease, and not in terms giving to him any right to the royalty derived from mining the coal from any other seam, or under any other lease, it is insisted that we should construe the contract as not intending to take away any supposed rights of Poteet under the previous contract referred to in that of 1893, but as if in addition to the royalty to accrue under the Harvey Coal and Coke Company lease, it had also been stipulated that Poteet should be paid royalty on all coal mined or that might be mined under all subsequent leases and from all other seams of coal in said land.

We cannot so construe these instruments. To do so would do violence to the plain terms thereof, and to introduce an uncertainty into the contract, which it was the expressed purpose of the parties to eradicate, and to make certain. If it was intended that Poteet should share in the royalty in all coal mined, why did he in his deed grant away all such rights, and not in the other instrument protect himself against that grant, by a provision covering the same, and limit his royalty rights to the Sewell seam mined under the Harvey Coal and Coke Company lease? Other leases than that lease were plainly in the minds of the contracting parties.

Counsel for appellant argues that because in the new contract of 1893, the fact of the existence of the old is acknowledged, the new contract constitutes conclusive evidence, as between the parties, of the existence of the old contract, relieving the plaintiff of the necessity of offering other or additional evidence to establish it. This upon the authority of *Carver* v. *Jackson,* 4 Pet. 1, 83, 88. But the fact of the existence of the original contract is not the question before us. The question we have to decide is, what are the rights of the parties under the new or modified contract, for by the very terms of the new the old was merged into it. The new was to remove uncertainties in the old, and put the rights of the parties beyond controversy. The new contract was supported by a valuable consideration recited not only in the deed but in the supplementary contract; that the parties were competent to make a new contract, even to the extent of releasing some rights under the old, and that the new was supported by a sufficient consideration, can not be controverted.

It is well settled by this court and by other authorities, that a contract may be discharged by the parties thereto, by an entirely new one entered into by them with reference to the same subject matter, the terms of which are co-extensive with but repugnant to the original contract. *Marsh* v. *Despard,* 56 W. Va. 132; 3 Page on Contracts, section 1354; *Grand Trunk W. Ry. Co.* v. *Chicago & E. I. R. Co.,* 141 Fed. 785. And we have decided in a recent case, *Myers* v. *Carnahan,* 61 W. Va. 414, point 3 of the syllabus, that: "Where a new contract is made with reference to the subject matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with a later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provisions of the original, which are inconsistent with those of the latter." Nothing is plainer it seems to us than that the grant in the deed of rights and interests not reserved therein, nor provided for in the contemporaneous contract, are clearly inconsistent with the theory of plaintiff of any additional rights which might have accrued under the original contract whatever they may have been.

So construed the new contract of 1893 eliminates from this controversy all questions presented upon the pleadings and proofs, and upon exceptions to the report of the master commissioner, as to the rights of the plaintiff, or of those under whom he claims, to the royalties reserved in the lease of the Fire Creek seam or vein of coal to McGuffin of 1901, and the questions presented with reference to that branch of the case need not be further considered. The fact is that no coal was ever mined under that lease, nor were the minimum royalties ever collected by Harvey or his executors. A suit was brought by his executors after Harvey's death to recover the minimum royalties, but the suit was compromised on terms of payment by McGuffin to these executors of the sum of five thousand dollars. But as we have construed the contract of 1893, the matters involved in that controversy with McGuffin become immaterial.

The questions remaining to be considered are those which pertain to the royalty on the coal mined or that could have been mined under the lease to the Harvey Coal and Coke Company, of May 29, 1893. The rights of John Poteet and of his widow and legatees to one-fourth of the royalty, provided for under the contract of 1893, accruing under that lease, are not controverted. The questions presented for decision are, whether the obligations of Harvey and of his executors under that contract have been fully discharged, either to John Poteet in his life time, or to his widow and personal representatives since his death.

On the theory that when Harvey in 1905 conveyed to the defendant Imboden, trustee for Harvey's wife, all his right, title, interest and estate in and to the coal land in question, as the pleading and proof shows, the rights of Poteet to the royalties, accrued and to accrue under his contract of 1893, were thereby matured, plaintiff did not undertake to prove the amount of coal actually mined from the Sewell seam by the Harvey Coal and Coke Company, but the estimated amount of coal mined or that could be mined from that stratum, and the testimony of all of the witnesses is directed to that question, and the commissioner found, based upon the estimated quantity of coal in that seam, and the evidence on what percentage of the coal could be saved by proper mining,

the net amount to be one million, one hundred and thirteen thousand tons, or seventy five per cent. of the total amount of coal in that seam. The royalty on this amount at ten cents per ton would be one hundred and eleven thousand three hundred dollars, and the one fourth thereof, to which Poteet, under his contract with Harvey, would be entitled, according to the findings of the commissioner, would be twenty seven thousand eight hundred and twenty five dollars. The executors of Harvey proved before the commissioner, by receipts signed by him, payments to John Poteet in his life time on account of said royalty, sums aggregating $8,674.46, and to L. E. Poteet and George A. Poteet, executors, $22,-940.35, as evidenced by their receipt, of August 27, 1903, said receipt describing said payment, as "royalty from the coal mined by the Harvey Coal and Coke Co., which was leased to them by Morris Harvey, the amount which is paid on a contract between Morris Harvey and John Poteet, deceased." The aggregate of these payments is $31,614.81, and an excess of $3,789.81, over the estimated amount to which John Poteet and his widow and legatees were entitled.

On the hearing before the commissioner the plaintiff undertook to prove by himself and his brother George A. Poteet, that their receipt for $22,940.35, was intended as a blanket receipt, to cover all sums previously paid by Harvey to their father and to them, and that it was executed by them at his request for that purpose, and that it did not in fact represent an actual payment of that sum of money to them. But both being necessary parties to the suit and interested personally and as executors and personal representatives in the event thereof, and the plaintiff in his amended bill claiming by assignment from his brother, George A. Poteet, of the latter's interest as remainderman, in his father's estate, and in the recovery sought, their testimony was objected to as incompetent, because relating to personal transactions had with the decedent Harvey in his life time.

Certainly this evidence was wholly incompetent by section 23, chapter 130, serial section 4879, Code 1913. It is argued on behalf of the plaintiff and appellant that the evidence of George A. Poteet is competent, because at the time it was given, his mother, the life tenant, was still living. But she

was only life tenant, and both witnesses were by the provisions of their father's will remaindermen, and entitled to all rights accruing under the will, and under the terms of the contract on the death of Mrs. Poteet. Both witnesses were, therefore, incompetent, at the time their evidence was given before the commissioner, and at the date of the hearing, and the evidence of George A. Poteet was not rendered competent by his and his sister's subsequent assignment to the plaintiff, pending this suit, of their interests in the contract of 1893, relied on, for it was under, by and through him, to the extent of his interest in said contract, that plaintiff pro tanto bases his right of recovery in this suit; wherefore, George A. Poteet was clearly incompetent to give evidence relating to his personal transactions with the decedent Harvey.

The cases cited and relied upon by appellant's counsel, *Sayre* v. *Woodyard,* 66 W. Va. 288; *Gilmer* v. *Baker,* 24 W. Va. 72, and other cases, are not in point. The statute clearly excludes both these witnesses. Nor do we think there is any merit in the point, that the incompetency of George A. Poteet was waived by the cross-examination. His evidence given in chief was objected and excepted to by the defendants at every point where it related to personal transactions with the decedent Harvey, and besides, such evidence being incompetent, according to our decisions, may be taken advantage of in the appellate court, though no objection be made thereto in the court below. *Middleton* v. *White,* 5 W. Va. 572; *Rose & Co.* v. *Brown,* 11 W. Va. 122; *Martin* v. *Smith,* 25 W. Va. 579; *Kimmel* v. *Shroyer,* 28 W. Va. 505; *Long* v. *Perine,* 41 W. Va. 314; *Woodville* v. *Woodville,* 63 W. Va. 286; *Cooper* v. *Cooper,* 65 W. Va. 717.

But it is contended by counsel that the objections based on the incompetency of the witnesses were waived by cross-examination, and some decisions from the courts of other jurisdictions are cited, which to some extent at least do support this proposition. The cases cited and relied upon are the following: *In Re Hess' Estate,* 57 Minn. 282, 59 N. W. 193; *Ables* v. *Ackley,* 126 Mo. App. 84, 103 S. W. 974; *Edwards* v. *Latimer,* (Mo.) 82 S. W. 109; *Field* v. *Brown,* 24 Grat. 74; *Shipp* v. *Davis,* 78 Ga. 201, 2 S. E. 549; *Moore* v. *Dutson,* 79 Ga.

456, 4 S. E. 169; *Schonbachler* v. *Mischell,* (Ky.) 89 S. W. 525; *Treadwell* v. *Lennig,* 50 Fed. 872.

The Virginia case of *Field* v. *Brown, supra,* does not support the broad proposition for which it is cited. That case simply holds that when the deposition of one party has been taken, and objection thereto of the other party for incompetency has been sustained, and the latter on cross-examination has brought out a fact relating to the same subject, he cannot have the questions and answers, so elicited, on cross-examination, struck out, though they may refer to the acts and declarations of deceased persons under whom he claims. In the later case of *Neilson* v. *Bowman,* 29 Grat. 732, it is held, that where the objection on the ground of incompetency is made at the head of the deposition of the witness, the objection is not waived by cross-examination. And in *Warwick* v. *Warwick,* 31 Grat. 70, the same rule was applied, where the objection was not made until four or five questions in chief had been propounded to the witness. In *Achilles* v. *Achilles,* 137 Ill. 594, it was distinctly decided that where depositions are taken before a master, who does not pass on the competency of the witnesses, a party does not by cross-examination waive his objection to the testimony, based on incompetency. And it was distinctly decided by this court, in *Calwell* v. *Prindle,* 11 W. Va. 307, that when the cross-examination is limited to the evidence in chief, a party does not waive his objection based on incompetency by such cross-examination, and the objection being sustained to the evidence in chief, the whole evidence, including that which was brought out on cross-examination, goes out as incompetent, and we think the weight of authority supports this view, except when on such cross-examination new matter is brought out. 12 Ency. of Evidence, 1010; 9 *Id.* 133; *Miller* v. *Miller,* 92 Va. 510, 515; *Treadwell* v. *Lennig, supra.* The rule in Missouri does not seem to be very well settled. In the case of *Johnston* v. *Johnston,* (Mo.) 61 L. R. A. 166, it was distinctly decided, that an objection to the testimony of a surviving partner to a cause of action in his own behalf, which is forbidden by statute, is not waived by cross-examining him only as to matters covered by his examination in chief. The later case of *Edwards* v. *Latimer, supra,* relied upon by appellant's counsel, is clearly distin-

guishable from the Johnson case.  The court in that case says:
"While we think defendant was incompetent because his
mother, the opposite party to this contract, was dead, yet,
having permitted him to testify without objection in denying
the conversations attributed to him and his mother and sister
by his sisters, Mrs. Monroe and Mrs. Edwards, when his in-
competency was apparent, plaintiffs could not afterwards be
heard to object on that account."  We are clearly of opinion,
therefore, that the evidence of plaintiff and of his brother,
George A. Poteet, was wholly incompetent.

But it is argued that without the testimony of George A.
Poteet, the receipt itself is not proven, and that disconnected
from that evidence the receipt is not competent to prove the
fact or amount of the receipt.  The defendant Imboden, exe-
cutor, proved that the receipt came into his possession along
with the papers of decedent.  He also proved subsequent con-
versations by him with Poteet in reference thereto, and
Poteet's admission of the existence of the receipt.  Besides,
the receipt was put in evidence before the commissioner in
connection with Imboden's testimony, without objection, and
the genuineness of the signatures thereto was distinctly waived.
As the receipt discloses on its face the subject to which it
relates, we think it was competent independently of the tes-
timony of the plaintiff or George A. Poteet, to go in evidence
as proof of the facts disclosed on its face.

In conclusion it may be said generally that the acts and
conduct of the parties, subsequently to the making of the con-
tracts, support our construction thereof.  It is unnecessary
to detail these subsequent transactions, because we are able
to dispose of the case as indicated without doing so.  All other
questions presented become immaterial.

Our conclusion, therefore, is to affirm the decree.

*Affirmed.*