**HOUSTON, E. & W. T. RY. CO. v. BROWDER.** (No. 1037.)*

(Court of Civil Appeals of Texas. Beaumont. July 17, 1924. Rehearing Denied Oct. 15, 1924.)

**1. Appeal and error ⬉1040(11)—Overruling exception to portion of petition pleading oral agreement modifying written contract held, though error, not prejudicial.·**

Overruling exception to portion of petition on ground that it set up parol agreement to vary terms of written contract sued on held, though error, not prejudicial.

**2. Evidence ⬉397(1)—Parol evidence of prior negotiations inadmissible to vary plain terms of written contract.**

Negotiations leading to execution of written contract are merged therein, and when it is free from ambiguity parol evidence of such negotiations is inadmissible to vary its terms.

**3. Contracts ⬉354—Special findings held not in conflict with general verdict for plaintiff.**

In action against railroad for profits lost when defendant prevented plaintiff from carrying out grading contract, special findings that plaintiff had at times permitted teams to become confused, and had failed to follow directions of engineer in certain particulars, held not so in conflict with other special findings as to render erroneous general verdict for plaintiff based on interpretation of findings as whole·as finding substantial performance to time of discharge.

**4. Appeal and error ⬉930(3)—In absence of request for submission of issues, findings of court thereon necessary to sustain judgment are presumed.**

In absence of request for submission of particular issue, findings thereon by court necessary to support judgment will be presumed.

**5. Trial ⬉365(1) — In interpreting special findings it is proper to look to pleadings and · evidence as whole.**

In interpreting special findings of jury it is proper to look to pleadings and evidence as whole.

**6. ·Damages ⬉163(2)—Burden on defendant to prove wrongfully discharged contractor could have minimized damages.**

In action for damages for wrongful discharge of contractor, defendant has burden of pleading and proving that plaintiff could have minimized his damages.

**7. Damages ⬉190—Evidence as to profits lost from wrongful discharge held sufficient to sustain recovery.**

In action for lost profits from wrongful discharge of contractor employed to do railroad grading, evidence as to profits plaintiff could have received had he been permitted to perform held sufficient to sustain recovery.

Appeal from District Court, Montgomery County; J. M. Combs, Judge.

Action by F. G. Browder against the Houston, East & West Texas Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Baker, Bootts, Parker & Garwood, Berry, Harris & Moore, and Garrison & Watson, all of Houston, and A. L. Kayser, of Conroe, for appellant.

Gill, Jones, Tyler & Potter, of Houston, and R. J. Sullivan, of Conroe, for appellee.

HIGHTOWER, C. J. This was a suit by the appellee, F. G. Browder, against the appellant, Houston, East & West Texas Railway Company, for damages because of the alleged loss by appellee of profits which he would have earned and made had he been permitted to carry out and complete a certain .contract entered into between him and appellant on the 4th day of April, 1921, under which he was to perform certain work in preparing appellant's roadbed for ballast between the stations of Humble and

Napier, a distance of about 39 miles. Appellee alleged, in substance, that as a part of the agreement between him and appellant he was to return as a discount or rebate to appellant, acting through its superintendent, R. T. Walker, 10 per cent. of the gross earnings that he might make under the contract. He alleged that he went to work under the agreement as orally made, and that thereafter the agreement was reduced to writing, but that it did not contain that part of the oral agreement with reference to the 10 per cent. rebate, and that that part of the agreement remained in parol.

Appellee further alleged that he entered upon the performance of the work under the contract and faithfully discharged his duty thereunder, and received pay according to the terms of the contract for the work done by him for a period of about seven months, and was then notified that his services would not be needed after the 31st of October, 1921, and that he was on that date discharged by appellant, and was not permitted to go on and carry out the terms of the contract between them; that, had the contract not been breached by appellant, and appellee had been permitted to go on and carry out the contract as made by preparing appellant's road for ballast for the distance covered by the contract, he would have earned and made a net profit of $14,196. Appellee's pleading showed definitely what the cost would have been to him in the way of teams, drivers, machinery, vehicles, etc., necessary in the prosecution of the work, and then showed what the profits to him would have been.

[1,2] To that portion of appellee's petition setting up the oral agreement between appellant's superintendent, Walker, and himself, by which it was agreed that appellee was to return, as a rebate, 10 per cent. of his gross earnings under the contract, appellant duly excepted, on the ground, substantially, that such was an attempt on appellee's part to vary the terms of a written contract, but the court overruled this exception. At the outset we will say that this exception on the part of appellant should have been sustained. The written contract between the parties shows upon its face that it was a full and complete contract, and there was nothing in it about a rebate to appellant in any sum. While it is true that the claimed oral agreement relative to the 10 per cent. rebate was made some three or four days before the written contract was actually signed, nevertheless practically nothing had been done under it by either party, and it is clear from this record that their negotiations, which had been pending for some time prior to the execution of the written contract, were finally completed and ended when the written contract was executed. It is a well-settled rule of law

that all previous negotations leading up to the execution of a written contract are merged into the written contract as completed, and, where the latter is free from ambiguity, parol evidence of prior negotiations cannot be received to contradict, alter, or modify the plain and unambiguous terms of the written contract. Harper v. Lott, etc., Co. (Tex. Com. App.) 228 S. W. 188, and the authorities there cited; Eldora Oil Co. v. Thompson (Tex. Com. App.) 244 S. W. 505. The action of the trial court, however, in overruling appellant's special exception in this case worked no prejudice to appellant, and that erroneous action cannot work a reversal of the judgment.

Appellant further answered by general and special denial, and specially pleaded the terms of the written contract, and in that connection alleged that appellee only had the right to do such work as the appellant's engineer might direct, and no more, and pleaded the provisions of the contract to the effect that, if in the judgment of appellant's superintendent the work was not being performed in accordance with the plans, specifications, and instructions that might be given appellee, appellant should have the right to terminate the contract, and in that connection set out certain particulars in which appellee had failed to comply with the terms of the contract in accordance with the plans, specifications, and instructions, and these particulars were as follows: (1) That appellee allowed the teams furnished by him on the work to become congested and confused; (2) that appellee failed to follow instructions of appellant's engineer as to how the dirt he was moving would be placed while working under the contract; (3) that he failed to follow the instructions of the superintendent or engineer conveyed to him in person or through their subordinates as to how the dumps should be rounded on top; (4) that he secured dirt from places other than those provided by the engineer and contrary to the engineer's instructions.

By a supplemental petition appellee replied by a general denial, and specially denied any failure or refusal on his part to comply with instructions, etc., of appellant's representatives, and further specially alleged that all work that he had done for appellant under his contract up to the time of his discharge had been duly accepted and paid for by appellant, and that he was not discharged for any failure or refusal on his part to comply with his contract in any respect, and, in substance, that, if there had been any such failure on his part, it had been waived by appellant, and that his discharge was willful and without cause.

The written contract, the breach of which by appellant was made the basis of this suit, was as follows:

"Jobbing Contract.

"This agreement, entered into this the 4th day of April, A. D. 1921, between the Houston East & West Texas Railway Company, styled first party, and F. G. Browder, of Cleveland, Tex., styled second party:

"Article I.

"In consideration, and under the terms and conditions hereinafter stated, the second party will furnish all teams, and drivers, labor and necessary equipment and will do such grading work between Humble and Napier necessary for preparing first party's road.bed for ballast, and as first party's engineer may direct. Where work hereunder is to be performed on a daily basis, it is understood that ten hours work shall constitute a · day. Work herein undertaken must be begun within ten days from date second party is notified so to do, and it must be diligently prosecuted as requested by first party until completed, within not exceeding ―― working days from the date work is commenced. All work shall be done in accordance with drawings, specifications or instructions that may from time to time be given to second party by the first party, which may be hereto attached as an exhibit, or be furnished from time to time hereafter.

"No claim for overtime or force account by the second party or others engaged in this work will be honored or paid by the first party unless request therefor has been made in writing by the first party's duly authorized representative, and said request has been granted in writing.

"Article II. ·

"As consideration for said work the first party agrees and promises to second party as follows:

"Fifty (50¢) cents per hour for each combination of team and driver used and twenty-five (25¢) cents per hour for each slip holder not to exceed one for each three teams worked.

"Where work is performed on a daily basis, and second party is prevented from working a full day, as herein above provided for, from any cause whatsoever, then second party shall receive a proportionate amount of the daily rate as the number of hours actually worked bears to the total number of hours representing a day's work.

"Before any payment is made the work shall have been inspected and accepted by first party's duly authorized representative, and if it is not up to the first party's requirements it shall be made so by second party at his expense.

"Second party shall furnish satisfactory evidence to first party, if requested to do so, that the work herein undertaken and performed is free from any and all liens for amounts due, or claims to be due for labor performed, or materials or tools furnished second party in the performance of said work.

"Second party expressly agrees to indemnify and save harmless the first party from all claims or demands for labor performed, or to be performed, or materials furnished, for said work.

"If, in the judgment of the first party's superintendent, the work herein undertaken is not being performed by second party, in strict accordance with the plans, specifications, or in-

structions that may have been given, or if second party does not use due diligence toward completing work in time above specified, then first party shall have the right to terminate this contract and proceed with the work in such manner as it may desire, and second party shall be .paid for the proportionate amount of work completed at the time of cancellation of this contract, less any deductions that may have been made to insure first party against loss of time or expense in the completion of this work, and first party shall not be held liable for any loss or damage to second party on account of the cancellation of this contract.

"Article III.

"It is expressly agreed and understood that the second party and his employés, or others engaged in, on or about the work, except employés regularly on the·pay roll of first party, are in no way agents or representatives of first party, but that second party is an independent contractor, and that such persons as may be on or about the work are there at second party's sole risk, and with his permission, and should second party or any of his employés, or others, on or about said work, be killed or injured, or should any property including stock and teams of second party or of others, be damaged, destroyed, injured, or killed during .the progress of said work, the second party expressly assumes sole liability therefor, and hereby agrees to protect and save first party harmless from all claims, demands or suits, and all expenses or losses, resulting therefrom.

"The first party will furnish no transportation for· men or materials, teams or tools for second party as part consideration for this contract, except upon payment of regular tariff rates.

"Article IV.

"The second party expressly guarantees the workmanship furnished by him in fulfilling this contract to be first class in execution and quality.

"The term 'his' as used herein includes corporations as well as persons and firms.

"Executed in duplicate by the parties hereto, each to have the full force and effect of an original, the day and year first above written. The Houston East & West Texas Railway Company, by G. ʍ. Waid, Vice President and General Manager. F. G. Browder."

The case was submitted to a jury upon special issues, and ·upon the verdict as a whole, after appellee entered a remittitur of $1,500, the judgment was rendered in his favor for $12,500.

The special issues submitted to the jury, together with ·the jury's answers to each, were as follows:

"Special Issue No.. 1. Did the defendant Houston East & West Texas Railway Company, acting by and through its agent and employé R. T. Walker, contract with the plaintiff Browder that said Browder was to pay a rebate or discount to defendant railway company on all sums paid him by defendant under written agreement of date April 4, 1921, between plaintiff and defendant?"

Jury's answer: "It did."

"Special Issue No. 2. If you have answered

that plaintiff Browder contracted to pay the defendant railway company a 10 per cent. rebate and only in that event you will answer the following question: Did said Browder pay or offer to pay to defendant railway company said rebate?"

Jury's answer: "Yes."

"Special Issue No. 3. There has been introduced in evidence a written instrument dated April 4, 1921, between the plaintiff, Browder, and defendant railway company covering the grading of defendant's roadbed for ballast between Humble, Tex., and Napier yards. Did plaintiff, Browder, perform said contract up to the time he was discharged in compliance with the plans, drawings, specifications, and instructions of the defendant railway company, its servants, agents, and employés?"

Jury's answer: "He did."

"Special Issue No. 4. Taking into consideration the manner and method of the plaintiff in performing the work under the contract sued on, and all other circumstances in the case had plaintiff not been discharged, and had he been permitted to complete the contract according to its terms, using such number of men and teams as you may find from the evidence to be reasonable and necessary, would he or not have made a profit on the uncompleted work?"

Jury's answer: "He would."

"Special Issue No. 5. If you have found in answer to special issue No. 4 that the contract under which plaintiff was working was one on, which he would have made a profit, if he had not been discharged, then you will answer the following: Giving due consideration to all the evidence before you, what sum of money, if any, do you find to be the net profit, if any, that the plaintiff, Browder, using such teams, men, and equipment as were reasonably necessary, would he have received under the terms of the contract between him and the defendant, as you have found such terms to be, provided he had completed the work covered by said contract from the point he was discharged to Napier yards?

"In answering this question, you will ascertain said amount, if any, by taking the total amount that he would have received for said work under the terms of said contract as you have found said terms to be, and subtracting therefrom the total necessary cost to him, of completing said work, stating the amount of such profit, if any, in dollars and cents. In determining such profits, if any, you will consider all reasonable and probable costs to plaintiff, such as he himself would have made, necessary and incident to his completion of said work, in compliance with the terms of the contract, and you are further charged that, if you have found in response to special issue No. 1 that as a part of said contract the plaintiff, Browder, was obligated to pay to defendant a rebate of 10 per cent. on the gross amount received from the defendant under the contract, then you will consider same in answering this question and deduct such amount as an item of expense. If, however, you have found in response to said special issue No. 1 that plaintiff, Browder, did not contract to pay to defendant said 10 per cent. rebate, then you will not consider it in arriving at your answer to this question."

Jury's answer: "We answer $14,000."

"Special Issue No. 6. Did or did not the plaintiff require the teams and men furnished by him to perform faithful service while working under the contract plead by plaintiff?"

Jury's answer: "We answer he did."

"Special Issue No. 7. Did or did not the plaintiff allow the teams furnished by him to become congested and, confused on the work that he was instructed to do under the contract pleaded by him?"

Jury's answer: "We answer he did."

"Special Issue No. 8. Did or did not the plaintiff see to it that the teams furnished by him worked in a reasonably faithful manner during the time they were working under the contract pleaded by plaintiff?"

Jury's answer: "We answer he did."

"Special Issue No. 9. Did or did not the plaintiff fail to follow the instruction of the engineer as to how the dirt that he was moving should be placed while working under the contract pleaded by him?"

Jury's answer: "We answer he did."

"Special Issue No. 10. Did or did not the plaintiff at any time fail to follow the instructions of the superintendent, conveyed to him in person or through his subordinates, as to how the dirt that he was moving should be placed while working under the contract pleaded by him?"

Jury's answer: "We answer he did not."

"Special Issue No. 11. Did or did not the plaintiff fail, at any time to follow the instructions of. the superintendent or engineer conveyed to him in person, or through their subordinates, as to how high and wide the dump should be made while working under the contract pleaded by him?"

Jury's answer: "We answer he did not."

"Special Issue No. 12. Did or did not the plaintiff fail at any time to follow the instructions of the superintendent or engineer conveyed to him in person, or through their subordinates, as to how the dumps should be rounded on the top while working under the contract pleaded by him?"

Jury's answer: "We answer he did."

"Special Issue No. 13. Considering the ability of the plaintiff to handle men, the nature of the work he was doing, his organization, and all the facts and circumstances surrounding him at the time, how many teams a day could the plaintiff, Browder, use in doing the work under the contract pleaded, in a proper manner, according to the plans, specifications, and instructions furnished him by the defendant's engineer and superintendent?"

Jury's answer: "We answer 18 teams."

"Special Issue No. 14. Did or did not the plaintiff fail to follow the engineer's instructions as to where bar pits should be made while working under the contract pleaded by him?"

Jury's answer: "We answer he did not."

"Special Issue No. 15. Did or did not the plaintiff fail to follow the instructions of the engineer with reference to the work pertaining to the bar pits?"

Jury's answer: "We answer he did not."

"Special Issue No. 16. Did or did not the plaintiff, while working under the contract pleaded by him, secure dirt from places other than those provided by the engineer and contrary to the engineer's instructions?

Jury's answer: "We answer he did."

"Special Issue No. 17. Did or did not the

plaintiff in the reasonable judgment of the defendant's superintendent require the teams and men furnished by him to perform reasonably faithful service while working under the contract pleaded by him?"

Jury's answer: "We answer he did."

"Special Issue No. 18. Did or did not the defendant's superintendent exercise reasonable judgment in discharging plaintiff from the work of the defendant company?"

Jury's answer: "We answer he did not."

"Special Issue No. 19. Considering the ability of the plaintiff to handle the men and his organization and all the facts and circumstances surrounding him at the time, were or were not ten teams a reasonable number for the defendant to instruct the plaintiff to use?"

Jury's answer: "We answer they were not."

After its motion for new trial was overruled, this appeal was prosecuted, and some fifty assignments of error, with as many propositions, are presented here by appellant upon which it claims the trial court's judgment should be reversed, but these numerous assignments and propositions will not be discussed separately, but appellant's main contentions under them will be stated and disposed of.

These contentions are: (1) That upon the jury's verdict as a whole, the court should have rendered judgment in appellant's favor, but, if mistaken in this, then (2) that the jury's answers to material issues submitted are so contradictory that no judgment should have been rendered upon them, but instead a mistrial should have been declared; (3) that appellee failed to prove that he could not procure other employment after his discharge, by which he might have prevented or minimized his damages; (4) that the evidence was not sufficient to show what profits, if any, appellee would have made on the unfinished part of the job, if he had not been discharged when he was, and therefore the evidence was insufficient to warrant the amount of damages awarded him; (5) that the trial court was in error in refusing additional special issues and charges requested by appellant.

[3] We will dispose of the first and second contentions together. At first blush it might appear that the jury's answers to special issues Nos. 7, 9, 12, and 16 were contradictory of some of their answers to other issues, and that therefore appellant's contention that no judgment could be entered upon the verdict as a whole should be sustained, and we have given appellant's contention on this point very careful consideration, but have reached the conclusion that, taking the verdict as a whole and reading it in the light of the pleadings and the evidence, as we find it in this voluminous record, there is really no contradiction between the jury's findings on these special issues and their findings as to any other material special issues in the case.

[4] The answer to special issue No. 7 was,

in substance, that the appellee had permitted his teams at times to become confused. There was no finding that this confusion resulted in any material delay or any loss whatever to appellant, or that it was a failure on the part of appellee to comply in any material or substantial respect with his contract. The jury were not asked to find whether such confusion, in the event they should find there was such confusion, constituted a failure on appellee's part to comply in any material respect with his contract, or amounted to a substantial breach of his contract in any respect. The fact is, as reflected by the record as we read it, it was only on one or two occasions where difficult grading was being done that there was shown to be any confusion in appellee's teams, and it further appears, in our opinion, that the confusion on these few occasions was occasioned by contrary instructions given by representatives of appellant as to how the grading of the dumps should be handled. But, had it been thought by appellant on the trial below that the confusion of appellee's teams on these few occasions amounted to a breach of his contract with appellant in a substantial way or to a material extent, it ought to have requested the submission of such issue, and, not having done so, it will be presumed that the trial court found that such confusion as took place on one or two occasions was not a material breach of his contract with appellant. There was nothing said in the contract itself about the confusion of teams, but appellee was required to furnish a sufficient number of teams to proceed with his work under the contract as it was contemplated he should do.

When we look at the answer to special issue No. 9, which appellant claims is a finding by the jury on a material issue which is contrary to other answers made by the jury on material issues, we find practically the same solution of the apparent conflict that we have pointed out with reference to special issue No. 7. The answer to issue No. 9 was, in substance, that appellee did fail to follow the instructions of the engineer, as to how the dirt that he was working should be placed while working under the contract pleaded by him. The evidence in this case shows that during the time that appellee was performing his part of the contract there were at different times a number of different agents and representatives of appellant who were authorized to instruct and direct appellee as to how he should do and perform his work under the contract. These authorities ranged all the way from the superintendent down to the section boss, and there were between eight and ten of them, and the evidence in this case shows, we think, that on a number of occasions one of these representatives of appellant would tell or direct appellee to do certain work in a certain way, and when he

would attempt to comply some other fellow with like authority would come along and object to the manner in which appellee was doing the work, and he would then be told by appellee that he was doing the work as the last fellow who came along had instructed him, and on some occasions this conflict in directions from these different representatives would result, necessarily, in appellee's disobeying the order and direction of one of them, and necessarily the jury could not truthfully answer such an issue as No. 9 in any other way than they did. But, as we said with reference to issue No. 7, it was only on rare occasions that there was a failure to follow the directions of any of appellant's representatives, and the jury was not requested to find whether there was any material breach of the contract on appellee's part, even if he did disobey some of appellant's representatives and follow others.

With reference to special issue No. 12, when we go to the record for the evidence, we find that appellee, on occasions when and where he was rounding up dumps, did fail to comply with the directions and suggestions of certain representatives of appellant, but in doing so he was following the directions and suggestions of some one also authorized by appellant to direct and control him, and we make the same disposition of appellant's contention with reference to this special issue as we have made to the previous two.

[5] With reference to special issue No. 16, the answer to which was, in substance, that the appellee did secure dirt from places other than those provided by the engineer, and contrary to his instructions, we find from the evidence in the record that on one or two occasions the appellee did secure dirt from a place different from that directed by one of engineers, but in doing so he again followed the direction of another man representing appellant, and who was present on the job and who was authorized to direct appellee as to where he would secure the dirt. We think it is reasonably clear from the record in this case, that is, from the evidence which was admitted under the pleadings of the parties, that on each occasion when appellee failed to comply with directions given him by authorized representatives of appellant it was because of the conflict in such directions, and the jury saw this, and could not have answered these four issues and been truthful in doing so, except by stating as they did that on some of these occasions what appellee did was not as directed by some one of appellant's representatives, but they did not mean to find, as is reflected by this record, when we consider their verdict as a whole, that he willfully or negligently refused to comply with any of the terms of his contract, but, on the contrary, we think the verdict as a whole shows that the jury found, and intended to find, that there was

a faithful compliance by appellee with his contract, and that his discharge by appellant was unreasonable and undeserved. The jury find specifically that he caused his men to work faithfully and diligently; that he kept his teams at work faithfully; and further found that there was no reason for his discharge, and that appellant's action was arbitrary and unreasonable. In interpreting the jury's verdict in this case it is proper to look to the pleadings and the evidence as a whole, and we think that the verdict, when read in the light of the issues made by the pleadings and evidence, is not only not a finding in favor of appellant as to the breach of appellee's contract in any material respect, but also that there is not any conflict in the jury's determination of the material issues submitted.

As said by the court in Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015:

"When considered in the light of the issues raised by the pleadings and evidence, any seeming conflicts in these findings disappear, or can be reasonably reconciled, and it is the duty ·of the court in interpreting the answers of the jury to the questions submitted to them to reconcile apparent conflicts in the answers, if this can be reasonably done in the light of the pleadings and evidence."

See, also, Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Prenz v. Strohmeir (Tex. Civ. App.) 177 S. W. 178; Bank v. Rush (Tex. Com. App.) 246 S. W. 349; Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963.

Appellant earnestly insists that the decision in Jordan v. Morgan, 154 S. W. 599, by the Texarkana court sustains its contention that the findings of the jury in this case as to the four special issues we have been discussing was, in effect, a finding by the jury that appellee had breached his contract in those four material particulars, and that therefore he was not entitled to claim damages against appellant for discharging him. We have read the case of Jordan v. Morgan very carefully, and are unable to agree with the learned counsel for appellant that the decision in that case has any application here. That was a case where the manufacturers of lumber (small mill owners in the woods) entered into a contract with a purchaser for all the cut of their mill during a certain period. Under the contract the lumber was to be manufactured according to certain methods and specifications, and was to be stacked and dried according to certain specifications, and the manufacturers afterwards sued the person who had contracted to take the cut of the mill for damages for breach of contract, in that he had failed to take all the lumber as cut. It was admitted by the manufacturer in that case, upon the stand, that he did not comply with the specific terms of the contract in his manufacture

and stacking and curing of the lumber, and it was further shown, without dispute, that his failure to do so made a material difference in the market value of the product of his mill, and it was held by the Texarkana court, and rightly we think, that the purchaser was not compelled to accept the lumber which had not been manufactured and dried and stacked as the contract called for. That was all that the court decided in that case, and we think it very clear that it has no controlling effect here.

[6] As to the third contention that appellee failed to prove that he could not procure other employment after he had been discharged, and that therefore he had not made out a case, it will suffice to say that the burden rested upon appellant in this case to plead and prove, if it could, that appellee could have procured other employment by reasonable efforts on his part to do so, and thereby minimize his damages growing out of its breach of the contract. There was no such pleading and no attempt at such proof on appellant's part. Porter v. Burkett, 65 Tex. 383; San Antonio Light Publishing Co. v. Moore, 46 Tex. Civ. App. 259, 101 S. W. 867; Osage v. Lee (Tex. Civ. App.) 230 S. W. 518; Railway Co. v. Dresson, 43 Tex. Civ. App. 282, 96 S. W. 63; Allgeyer v. Rutherford (Tex. Civ. App.) 45 S. W. 628.

[7] We must overrule appellant's fourth contention because, as we construe the evidence in the record, there was ample and competent evidence to show what the probable cost would have been to appellee of finishing the job under his contract from the point where he was discharged, a distance of about 16 or 18 miles, and such showing was as definite as the law required him to make, and, after deducting such cost of completion, the amount that he would have received under his contract was as much and more than the judgment awards him in this case.

As to appellant's fifth contention, that is to say, the claimed error on the part of the trial court in refusing certain additional special issues and special charges requested by it, we have concluded that none of its propositions in that connection can be sustained. We have already shown what the issues were as submitted by the court, and they appear to us to be very full and complete and as fair to appellant as it was entitled to have submitted in this case, and we feel sure that none of the special issues or special charges requested by it were necessary for its protection, and that the refusal of them by the trial court was in no sense prejudicial to appellant.

This record reflects that the appellee, for the purpose and with the view to equip himself to carry out his contract with appellant, incurred a large expense and borrowed considerable money, and it stands to reason that when he was suddenly prevented by appellant from going on with the contract he was threatened with considerable loss. The jury has found, as we read their verdict, that the appellee made faithful and diligent efforts to carry out his part of the contract, and we believe that the evidence in the record justifies that finding, and we think, also, that the amount of damages awarded is not without support in the evidence, and we see no reason for disturbing the lower court's judgment. While we have not discussed all of the many propositions, at the same time we have considered carefully and discussed, at reasonable length we hope, the main contentions, and, believing that no reversible error has been pointed out, it has been ordered that the judgment be affirmed.