## HAMMON CONSOL. GOLD FIELDS v. POWELL.*

Circuit Court of Appeals, Ninth Circuit.
May 20, 1929.

No. 5632.

*Rehearing denied July 15, 1929.

O. D. Cochran, of Nome, Alaska, and Pillsbury, Madison & Sutro, Alfred Sutro, and Eugene M. Prince, all of San Francisco, Cal., for appellant.

Thomas R. Lyons and Ira D. Orton, both of Seattle, Wash., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and ST. SURE, District Judge.

RUDKIN, Circuit Judge. July 10, 1923, Nome Dredging Trust, a common-law trust, referred to throughout the record as the Trust, entered into an agreement with Hammon Consolidated Gold Fields, referred to in the record as Gold Fields, under the terms of which the Trust agreed to grant, bargain, sell, convey, and transfer to Gold Fields certain personal property and town lots in the Cape Nome Mining and Recording district, Alaska, for the sum of $155,000, payable as therein provided; and for and in consideration of the agreement to purchase the aforesaid personal property and town lots the Trust further granted unto Gold Fields a mining lease and option to purchase all and singular certain other real property enumerated and described in schedules attached to the agreement; the term of the mining lease and option to commence on the date of the agreement and to continue to and including December 31, 1935, unless sooner terminated as thereinafter provided. It was then agreed that the Trust should deliver possession of all and singular the mining property to Gold Fields on or before August 15, 1923, subject only to the obligation to pay certain royalties and minimum annual payments to the respective owners of the properties, and that Gold Fields should have the right as long as the agreement remained in effect to mine and extract all precious and other minerals from the land and, upon payment of the royalties, to appropriate the same to its own use. The agreement contained provisions in regard to the working of the mine, and then provided that as and by way of rental, which should also be paid and received on account of the purchase price for the mining ground thereby leased, and for all rights conferred by the agreement, Gold Fields should pay to the Trust from the recoveries of gold certain amounts, depending upon gold values per cubic yard. It was further agreed that if within any year the total amount of royalties should not equal the minimum annual payments for such year, as fixed by the agreement, then on or before December 1 Gold

Fields would deposit in the Bank of California for account of the Trust such sum as would make the total amount so deposited during the year equal to the minimum annual payments agreed upon, and if the total accrued interest and purchase price should not be paid on or before December 31, 1935, then any unpaid balance should be deposited on or before that day. It was further provided that if Gold Fields should fail to deposit the minimum annual payments or unpaid balance of the purchase price and accrued interest at the time and in the manner agreed upon, and should also fail to deposit within 30 days after the Trust should give or cause to be given written notice of the default and demand for payment, or if Gold Fields should default in the performance or observance of any other of its obligations or covenants contained in the agreement, or in any of the leases and options covering the properties enumerated in the schedules, and should fail to remedy such default within 30 days after notice and demand to remedy, then the Trust might at its option declare the agreement terminated, and thereupon all rights of Gold Fields were to cease and terminate, and in such event the Trust would have the right to keep and retain all moneys paid to it by Gold Fields as rental for the use and occupation of the property, the subject of the agreement, and as consideration of the rights conferred on Gold Fields thereby, without obligation to account to Gold Fields therefor; that Gold Fields should be without further obligation to make other or further payments to the Trust on account of the option except payment of accrued royalties, and that no other or further liability should be imposed on Gold Fields for breach of the contract. It might be further added that the purchase price of the several mining claims was fixed by the agreement in the event Gold Fields exercised the option to purchase. The minimum annual payment which became due on December 1, 1927, was not paid, and thereafter, on December 30, 1927, Gold Fields gave notice that reserving to itself the rights continuing in it after termination of the agreement of July 10, 1923, it thereby surrendered as of December 31, 1927, the lease of and option to purchase the mining claims in question and surrendered possession thereof. The present action was thereafter instituted to recover the balance of the minimum annual payments on two of the leases executed pursuant to the agreement, which became due and payable on December 1, 1927. A demurrer to the complaint was overruled by the court, and the defendant refusing to plead further,

a judgment was entered in favor of the plaintiff in accordance with the prayer of the complaint. From this judgment the defendant has appealed.

The appellant contends that the agreement between the parties was essentially an option; that as an option it imposed no obligation on the optionee to pay the purchase price until the option was exercised; and that the minimum annual payments involved in this action were essentially parts of the purchase price. The appellee, on the other hand, contends that the agreement was essentially a lease; that the obligation to pay the several minimum annual payments during the life of the lease was an absolute one; and that in any event the appellant could not defeat a recovery for the minimum annual payments falling due December 1, 1927, by surrendering the premises 30 days thereafter. If this latter contention is well founded in law, it becomes unnecessary, and would perhaps be improper, for us to consider the other and more important question.

The agreement and lease provided that the minimum annual payments were to be made by way of rental, and, parenthetically, that they were also to be made and received on account of the purchase price. If the sale was consummated, the payments were to be applied on account of the purchase price, and if not they were to be applied as rental for the use and occupation of the property and in consideration of the other rights and privileges conferred upon the appellant, including the option to purchase. Because of the different modes of application under different circumstances, it would be somewhat difficult to classify the payments when first made; but if they are to be classified at all, we think they were nearer akin to rental than to purchase money. The appellant was granted the use and occupation of the mining property, coupled with the right to extract and remove ore therefrom, and the agreement contained many other covenants to be kept and performed by the respective parties, having little or no relation to the option to purchase, such as a covenant on the part of the owners not to engage in mining in the Cape Nome district or to acquire any mining property therein during the life of the lease. For all these rights and privileges, the appellant promised and agreed to pay certain minimum sums on December 1 of each year, and when that date arrived, with the agreement in full force and effect, the sums payable were fully earned and the obligation to pay became absolute. It seems quite manifest to us that this obligation could

not be defeated or discharged by a surrender of the premises after the obligation had accrued. The contention of the appellant that it could be thus defeated or discharged is based upon two grounds. The first, that the payments were made on account of the purchase price, has been sufficiently answered. The second contention is based on paragraph 27 of the agreement, which provided for a forfeiture of the agreement at the option of the appellee for any default on the part of the appellant. As already stated, that paragraph provided that upon forfeiture the appellee should have the right to keep and retain all moneys paid by the appellant on account of the option as rental for the use and occupation of the property and as a consideration for the rights conferred, without obligation to account to the appellant therefor; that the appellant should be without further obligation to make payments to the appellee on account of the option, except payment of accrued royalties; and that no further liability should be imposed on the appellant for breach of contract. It is entirely plain from the context that the latter provision applied only in case the right of forfeiture was exercised by the appellee, just as another provision of the agreement authorized the appellant to withdraw from the agreement before a certain date and fixed his liability in that event. The provision gives no support to the broad claim that the agreement might be breached with impunity by the appellant in any other contingency.

It does not aid us to say that the subject-matter of the agreement was mining property, or that the agreement itself was only an option, for these are mere aids to interpretation, and if the language of the agreement is plain and free from ambiguity, as we think it is, there is no room for construction.

It is lastly contended that the complaint failed to state a cause of action because it failed to allege that the appellee had performed the main agreement between the parties. But the complaint did allege that the appellee had at all times kept and performed the agreements contained in the lease, and that instrument contained all the substantial provisions of the antecedent agreement. Furthermore, we think it sufficiently appears from the record that the case was presented on the merits in the court below, and that mere technical defects, curable by amendment, were not raised or considered.

What the rights and obligations of the respective parties may be in the future, in view of the surrender of the property after the annual minimum payments for 1927 became due, we need not inquire, and upon that question we express no opinion.

The judgment is affirmed.